UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EUGENE MCATEER, | Case No.: 2:20-cv-02285-APG-EJY |
| Plaintiff, | **Order Granting Motion to Dismiss in Part** |
| v. | [ECF No. 4] |
| SUNFLOWER BANK, N.A., | |
| Defendant. | |

    Eugene McAteer sues Sunflower Bank, N.A alleging Sunflower Bank fraudulently induced him to accept its offer of employment and sign a non-disclosure non-solicitation agreement (NDA/NSA).  Sunflower Bank allegedly offered McAteer a position as a financial advisor solely to gain access to the $75 million in client assets McAteer managed.  McAteer signed the NDA/NSA, which prohibited him from contacting his clients for one year after termination.  Sunflower Bank then terminated McAteer's employment on his first day of work. McAteer brings claims for breach of contract, fraudulent inducement, breach of the covenant of good faith and fair dealing, and negligent misrepresentation.

    Sunflower Bank moves to dismiss all the claims as legally deficient under Federal Rule of Civil Procedure (FRCP) 12(b)(6).  It contends the obligations stated in the complaint are contradicted by the terms of McAteer's at-will employment contract.  Sunflower Bank also moves to dismiss the claims because they are based on the alleged failure of performance under a contract, not fraud.

    I grant Sunflower Bank's motion to dismiss in part.  I dismiss the breach of contract claim because the employment contract is at-will, and therefore Sunflower Bank could terminate McAteer at any time and for any reason.  I dismiss the negligent misrepresentation claim because

Sunflower Bank either intentionally misrepresented its intent to perform, in which case its conduct was fraudulent, or it merely failed to perform its promise under the contract. I deny the motion to dismiss in all other respects. And I grant McAteer leave to amend his breach of contract claim.

I. **BACKGROUND**

McAteer is a securities advisor with 28 years of experience and a loyal clientele. ECF No. 1-1 at 4-5. In 2008, he joined Mutual of Omaha Bank. *Id.* at 5. In January 2020, Mutual of Omaha Bank was acquired by CIT Group, which then sold its wealth management and brokerage business to Sunflower Bank. *Id.* McAteer worked in the wealth management and brokerage division. *Id.* The deal was announced in Spring 2020, with a closing date of September 1, 2020. *Id.*

On June 26, 2020, Sunflower Bank offered McAteer a position as "Officer, Wealth Management Advisor" in Henderson, Nevada. *Id.* McAteer discussed the position with Sunflower Bank's human resources manager, Melinda Armstrong, for several weeks. *Id.* at 5-6. Their email communications specified McAteer would be paid a similar commission structure to his previous position, and Sunflower Bank intended to provide him with a professional space in which to work. *Id.* at 6. McAteer accepted the offer and signed the requisite NDA/NSA on July 13, 2020. *Id.* at 6, 15. Sunflower Bank told McAteer an office would be ready for him by approximately October 1, 2020, and he could work remotely in the meantime. *Id.* at 6.

The deal between CIT Group and Sunflower Bank closed on September 1, 2020. *Id.* At 8:00 a.m. that day, Armstrong called McAteer and informed him that he was being terminated effective September 22. *Id.* Sunflower Bank sent McAteer a severance and release agreement.

*Id.* Sunflower Bank also sent letters to McAteer's clients, informing them of their new wealth management advisor. *Id.*

McAteer alleges Sunflower Bank never intended to open an office in Henderson and did not make a good faith effort to provide him with an office space. *Id.* at 6-7. He also alleges that, given the short time between when he signed the contract and when he was terminated, Sunflower Bank had no intention of employing him. *Id.* at 4. McAteer contends that Sunflower Bank's goal was to steal his $75 million client base by having him sign an NDA/NSA and then terminating him. *Id.* at 7. McAteer sues Sunflower Bank for breach of contract, fraudulent inducement, breach of the covenant of good faith and fair dealing, and negligent misrepresentation. Sunflower Bank moves to dismiss the claims against it.

## II.     ANALYSIS

FRCP 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." When evaluating a motion to dismiss, I must accept the complaint's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "mere conclusory statements" are not entitled to that same assumption of truth. *Id.* at 678-79. In addition, a plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the complaint alleges facts that allow me to reasonably infer the defendant is liable. *Iqbal*, 556 U.S at 663. In making the determination as to whether there are sufficient factual allegations, I must draw on my judicial experience and common sense. *Id.* at 670.

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, I may consider "allegations contained in the pleadings, exhibits attached to the

complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (quotation omitted). Where conclusory allegations are contradicted by documents referred to in the complaint, I am not required to accept the allegations as true. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

In addition to Rule 8's pleading requirement, McAteer's claims are subject to Rule 9(b)'s heightened pleading standard because they sound in fraud.[1] FRCP 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." A plaintiff must provide the "who, what, when, where, and how" of the fraudulent actions. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation omitted). This requires "more than the neutral facts necessary to identify the transaction," including "what is false or misleading about a statement, and why it is false." *Id.* (quotation omitted). When the facts of fraud are in the defendant's exclusive control, the plaintiff can allege facts based on information and belief, but the plaintiff must state the "factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

In relevant part, FRCP 15(a)(2) states "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." District courts should apply Rule 15's policy favoring amendments with "extreme liberality." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (quotation omitted). I consider five factors to assess whether to grant leave to amend: (1) bad faith,

---

[1] Not all of McAteer's claims require fraud as an element. However, Rule 9(b) applies to claims that are "based on a unified course of fraudulent conduct." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). McAteer bases his claims on Sunflower Bank offering him a job to induce him to sign an NDA/NSA and steal his clients. *See* ECF No. 1-1 at 6. "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation omitted).

4

(2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Dismissal should be without leave to amend only when "it is clear . . . that the complaint could not be saved by any amendment." *Steckman*, 143 F.3d at 1296. Whether to grant leave to amend lies within my discretion. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

### A. Breach of Contract

Sunflower Bank argues the breach of contract claim should be dismissed because the complaint does not mention what provision it breached. Further, it contends the employment contract was at-will, and Sunflower Bank therefore had a right to terminate McAteer at any time without liability. McAteer responds that he worked with Sunflower Bank to notify his clients of the transition, and there was an implicit obligation to assist with the transition of his clients. McAteer contends that Sunflower Bank breached the contract by then terminating his employment.

To state a claim for breach of contract under Nevada law, McAteer must allege "(1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)). Under Nevada law, an at-will employment agreement is a contract. *D'Angelo v. Gardner*, 819 P.2d 206, 211-12 (Nev. 1991). An employment contract is presumptively terminable at-will. *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 553-54 (Nev. 1995). An employer has the right to terminate an at-will employee at any time without liability for wrongful discharge, unless the employer discharges the employee for a reason that violates public policy. *Minshew v. Donley*, 911 F. Supp. 2d 1043, 1061 (D. Nev.

2012); *see also Smith v. Cladianos*, 752 P.2d 233, 234 (Nev. 1988) (stating that an at-will employment can be terminated at any time if the employment is not for a definite term and there are no contractual restrictions on the right to discharge).

McAteer alleges Sunflower Bank breached the contract by terminating his employment on the day it began. Section VII of the NDA/NSA states: "my employment with SFB or any of its affiliates shall be terminable at will b[y] either SFB, such affiliate, or me." ECF 1-1 at 22. McAteer has failed to plausibly allege his employment was anything other than employment at-will. Thus, Sunflower Bank could terminate the employment contract for any reason without liability if there are no contractual or statutory restrictions on its right of discharge and the discharge did not violate public policy. McAteer has not pleaded facts to support a restriction on Sunflower Bank's right to discharge or a violation of public policy. I therefore dismiss this claim but grant leave to amend because it is not clear that amendment would be futile.

**B. Fraudulent Inducement**

In his second cause of action, McAteer alleges Sunflower Bank intended to induce him to sign the NDA/NSA to prevent him from contacting his clients post-termination. McAteer alleges Sunflower Bank made false or reckless representations and did not intend to provide him with employment. Sunflower Bank argues McAteer bases his fraud claim on the same allegations as his breach of contract claim. It also argues McAteer does not allege any specific communication that was false, or otherwise show how the claim was not subsumed by the contract. Sunflower Bank also asserts that its failure to deliver on promises in the contract does not give rise to a fraud claim. McAteer responds that causes of action for fraud in the inducement and breach of contract can be brought in the same complaint. McAteer also argues his complaint clearly meets the "short and plain statement" requirement.

To establish a cause of action for fraudulent inducement, McAteer must allege: (1) the defendant made a false representation, (2) the defendant knew or believed that the representation was false (or knew that it had an insufficient basis for making the representation), (3) the defendant intended to induce the plaintiff to rely on the representation, (4) the plaintiff justifiably relied on the representation, and (5) the plaintiff suffered damages as a result of this reliance. *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004). McAteer must allege more than "mere failure to fulfill a promise or perform in the future"; rather, he must plausibly allege "that the promisor had no intention to perform at the time the promise was made." *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

McAteer adequately alleges fraudulent inducement. The complaint and attachments identify the date the offer was made, the dates of the email communications, and the promises Sunflower Bank made. McAteer alleges Sunflower Bank falsely represented that it "intended to provide him employment and the opportunity to continue to service his clients at an office provided to him in Henderson, Nevada." ECF No. 1-1 at 8. He alleges Sunflower Bank knew it had an insufficient basis to make the representation: "Despite not having a sufficient basis to believe that they could, or would make the necessary office commitments, defendants extended an offer with the intention of inducing plaintiff to sign the NDA/NSA and facilitate the transfer of his clients to Sunflower." *Id.* He also alleges Sunflower Bank's goal was to steal his existing $75 million dollar book of business by offering him employment to extract the NDA/NSA and prevent him from contacting his clients. *Id.* at 6. McAteer claims he justifiably relied on the offer of employment by not seeking other opportunities where his loyal client base might follow him, and that he suffered damages in the form of lost commissions from his book of business. *Id.* at 8. This is specific enough to provide Sunflower Bank with notice of the alleged fraudulent

misconduct and alleges more than merely that Sunflower Bank failed to perform. McAteer has pleaded his fraudulent inducement claim with sufficient particularity, so I deny the motion to dismiss this claim.

### C. Breach of the Covenant of Good Faith and Fair Dealing

In his third cause of action, McAteer alleges Sunflower Bank breached the covenant of good faith and fair dealing by securing his clients with an NDA/NSA and then terminating his employment on the day it began. Sunflower Bank argues the contract does not contain the obligations McAteer alleges. McAteer responds that Sunflower Bank's conduct was not consistent with the spirit of the contract and led to his inability to contact his clients upon his termination.

Under Nevada law, "an implied covenant of good faith and fair dealing exists in all contracts." *A.C. Shaw Const., Inc. v. Washoe Cnty.*, 784 P.2d 9, 10 (Nev. 1989) (emphasis omitted). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that the defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) that the plaintiff's justified expectations under the contract were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991)). A breach of the covenant occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp.*, 808 P.2d at 922-23. Whether the alleged breaching parties' "actions fall outside the reasonable expectations of the [other] party is determined by the various factors and special circumstances that shape these expectations." *Id.* at 923-24.

McAteer does not allege in this claim that Sunflower Bank violated express terms of the contract. Rather, he alleges Sunflower Bank was unfaithful to the purpose of the contract by securing his clients with an NDA/NSA and then terminating him on his first day of employment. McAteer alleges Sunflower Bank knew the value of his client base, induced him to sign the NDA/NSA so he could not contact his clients post-termination, and then terminated him on his first day of employment. Finally, McAteer alleges that his justified expectations of joining Sunflower Bank and servicing his clients was denied. Taking McAteer's allegations as true, he has sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing. I therefore deny Sunflower Bank's motion to dismiss this claim.

### D. Negligent Misrepresentation

McAteer alleges he was induced to sign the NDA/NSA due to Sunflower Bank's misrepresentations that it would provide him with a job and an office in Henderson. Sunflower Bank argues McAteer did not specify any false representation that was not included in the parties' contract. Sunflower Bank also argues that its alleged failure to perform under a contract is not negligent misrepresentation. McAteer responds that his claim for negligent misrepresentation is primarily based on Sunflower Bank's promise to provide him with an office in Henderson, which he relied on when he signed the NDA/NSA.

Nevada has adopted the Restatement (Second) of Torts definition of negligent misrepresentation. *See Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978). A claim for negligent misrepresentation requires a plaintiff to plead (1) the defendant made a false representation; (2) the defendant made the representation during its course of business or in an action in which it had a pecuniary interest; (3) the defendant made the representation for the guidance of others in their business transactions; (4) the plaintiff justifiably

relied on the representation; (5) the reliance resulted in pecuniary loss to the plaintiff; and (6) the defendant did not exercise reasonable care or competence in obtaining or communicating the information. *G.K. Las Vegas Ltd. P'ship v. Simon Property Group, Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006); *see also* Restatement (Second) of Torts § 552 (1977). However, a negligent misrepresentation claim cannot be based on a promise of future performance "because such a statement is either fraudulent, *i.e.*, the person never held that intention at the time he made the statement, or it was not a misrepresentation at all, the person simply later failed to perform as promised." *Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010).

McAteer alleges Sunflower Bank negligently misrepresented that it would "provide him a job that would allow him to continue to service his existing client base with a commensurate commission structure and an office." ECF No. 1-1 at 10. Further, he alleges Sunflower Bank led him to believe it would be opening a Henderson office. *Id.* He claims to have relied on these representations and alleges Sunflower Bank failed to inform him it was not realistic to expect it to open the office. *Id.* These allegations are a misrepresentation as to future performance under a written contract. Sunflower Bank either intentionally misrepresented its intent to perform, in which case its conduct was fraudulent, or it merely failed to perform its promise by terminating McAteer on the first day of his employment. Either way, McAteer does not state a claim for negligent misrepresentation. Therefore, I grant Sunflower Bank's motion to dismiss the negligent misrepresentation claim. Because it is clear amendment would be futile, I deny leave to amend as to this claim.

### III. CONCLUSION

I THEREFORE ORDER that defendant Sunflower Bank, N.A.'s motion to dismiss (**ECF No. 4) is GRANTED IN PART**. Plaintiff Eugene McAteer's claims for breach of contract and

negligent misrepresentation are dismissed. McAteer may amend only his breach of contract claim by October 22, 2021. The motion is dismissed in all other respects.

DATED this 24th day of September, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE